John M. Eggers et al., Appellees, v. Jacob Hardwick et al., Appellants.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

2. DRAM-SHOPS—*what essential to establish liability against owner under section 9 of Act.* Section 9 of the Dram-shop Act was not designed to create a liability on the owner of premises simply because of ownership but the burden of proof is upon the plaintiff in an action under this section of the Dram-shop Act to prove the owner had knowledge that intoxicating liquors were to be sold or were in fact sold on the premises, but such proof of knowledge need not be shown by direct evidence but may be established by facts and circumstances.

3. DRAM-SHOPS—*what instruction proper under section 9 of Act.* It is proper to instruct the jury that it was not necessary, in an action brought under section 9 of the Dram-shop Act, to make all persons, who were guilty of selling intoxicating liquor to the persons to whom it was sold, parties defendant but that the person injured might sue any one or more of them and recover from him or them when found guilty, it appearing from the evidence that the person to whom the sale was made had visited another saloon during the day in question.

4. DRAM-SHOPS—*what instruction proper in action under section 9 of Act.* In an action under section 9 of the Dram-shop Act it is proper to tell the jury that if the person to whom liquor was sold had liquor from other places than the saloon of the defendant, yet if he obtained liquor from such other places, each contributing to his intoxication, etc., it would be no defense that he had obtained liquor elsewhere, it not being necessary that the instruction should state

that the liquor obtained elsewhere had contributed to such intoxication in any "appreciable degree."

5. EVIDENCE—*what establishes ownership.* Ownership of real property proven as of a specific day is presumed to continue until some change or alienation is shown.

6. TRIAL—*when argument of counsel improper.* In an action under section 9 of the Dram-shop Act, an argument as follows: "There is no hardship against rendering a verdict against the brewery in this case. The law makes it liable and fixes the limit, and breweries expect to have to pay damages of this kind. They figure on it in estimating their profits and the profits of the brewery business are big enough to stand it,"—is improper and is ground for reversal if it appears that it had any effect on the verdict, it being *held*, however, in this case that it did not appear that it had affected the verdict.

Action for damages under section 9 of Dram-shop Act. Appeal from the Circuit Court of Randolph county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 9, 1910.

R. E. SPRIGG and FRED GILSTER, for appellants.

A. E. CRISLER, for appellees.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This suit was instituted by appellees to recover damages alleged to have been caused by the sale of intoxicating liquors to their father, Fred Eggers, which caused his intoxication, and as a result of which he lost his life in attempting to board a moving train. It was alleged that appellees were his minor children dependent upon him and that by his death they were injured in their means of support; that the liquor causing such intoxication in whole or in part was sold and given him by appellant Hardwick who was the keeper of a dram-shop in a building owned by the appellant Brewing Company, which having knowledge that intoxicating liquors were to be sold therein, permitted said appellant Hardwick to occupy the building for that purpose.

Upon a trial there was a verdict and judgment against appellants and the grounds urged for reversal

are, that the verdict of the jury was contrary to the evidence; that the court erred in giving improper instructions asked by appellees; and that counsel for appellees in his closing argument to the jury made improper statements.

It is argued that the evidence is not sufficient to support the verdict upon the proposition that deceased was intoxicated at the time of his death, or that appellant Hardwick by himself or servant sold or gave him intoxicating liquor, or that appellant Brewing Company owned the premises at the time of the alleged sale or had any knowledge intoxicating liquors were to be sold in the building or knowingly permitted the sale therein.

The deceased resided at Willisville some three miles from the village of Percy and was a coal miner by occupation. On the morning of April 16, 1908, he went to Percy where Hardwick's saloon was located, arriving there about 5:30 A. M. He met an acquaintance named Stewart who testified he had three drinks of whiskey in the saloon of Hardwick and that the bartender and witness had the same number of drinks of whiskey with him. This was early in the day, very soon after the deceased arrived at Percy. A witness named Williams testified he saw the deceased get two drinks of whiskey from appellant Hardwick in his saloon about ten o'clock in the forenoon. This testimony was disputed by both Hardwick and his barkeeper.

The evidence further shows that the deceased was at Percy the entire day and was frequently in and out and about Hardwick's saloon most of the day, as stated by the witness Williams, and that about noon he was in a room over the saloon where there was a so-called free beer drinking going on and where there was a keg of beer being dispensed free, as stated by the witness Robinson. This witness does not say deceased drank any there but says he was sitting near the door with his head hanging down. Several witnesses who saw him during the afternoon and talked with him, give it

as their opinion he was sober, while several others, not so many in number, state he was drunk during the day and at the time of his death. The physician who examined him just after the accident states he had been drinking and that it was manifest from the heart's action, the mental condition of the patient, and the presence of the odor of alcohol. The undertaker who embalmed the body, testified his face was flushed and that the body had the odor of liquor. The jury heard these statements and opinions from the witnesses themselves and the verdict we think is supported by the evidence upon the question whether the deceased was intoxicatd at the time of his death.

There is a conflict in the evidence whether any liquor was sold or given the deceased in Hardwick's saloon. The testimony upon this charge is already referred to and it is not necessary to restate it but we think this question was one of fact for the jury and the verdict is not so against the weight of the evidence it should be disturbed for this reason.

Section 9 of the act entitled "Dram-Shops" for a violation of which this suit was brought, provides that "any person owning, renting, leasing or permitting the occupation of any building or premises and having knowledge that intoxicating liquors are to be sold therein or who having leased the same for other purposes shall knowingly permit therein the sale of intoxicating liquors—shall be liable jointly and severally," etc.

We agree it was not by this provision intended by the Legislature to create a liability on the owner of premises simply because of ownership, but the burden of proof is upon the plaintiff in an action under this statute, to prove the owner had knowledge intoxicating liquors were to be sold, or were sold in the premises.

It is earnestly contended the proof is not sufficient in this case to support the verdict as against the appellant Brewing Company. The evidence shows that the appellant company had its brewery at Murphys-

boro where it was engaged in the manufacture and sale of beer during the time appellant Hardwick occupied the premises in which it is charged he sold or gave liquor to the deceased Eggers; that the premises upon which the saloon was located were the northwest corner of lot five, block ten, in the village of Percy, which premises were conveyed to the Brewing Company by deed from one Griffiths and wife, October 18, 1905.

It is said this testimony alone is not sufficient to prove ownership at the time of the occupancy by Hardwick, but it is admitted in appellants' statement that the Brewing Company became the owners of said property in 1905.

It is an elementary rule of evidence that where one is proven to be the owner of property such ownership is presumed to continue until some change or alienation is shown.

It is urged that the statute being a penal one the proof of knowledge on the part of the Brewing Company that intoxicating liquors were sold in the premises should be direct, and is not to be inferred. Direct proof is not required to prove any fact, but the main fact necessary to be shown may be shown from other facts and circumstances which tend to prove the main fact in controversy. The main fact of knowledge here was sought to be established by circumstances and it was shown, in addition to the fact that appellant Brewing Company was engaged in the business of manufacturing and selling beer and that Hardwick had occupied its premises as a saloon for the space of a year, that he had handled and sold the beer made by the Brewing Company receiving it in cases and kegs in considerable quantities. We think these circumstances taken together, were sufficient to raise a reasonable inference that the Brewing Company knew what its property occupied by Hardwick was being used for. They all tended to prove knowledge and their weight was a question for the jury.

It is assigned for error that the court improperly

gave to the jury for appellees instructions three and four.

Number three advised the jury it was not necessary to make all persons who were guilty of selling intoxicating liquors to deceased parties defendant but the person injured might sue any one or more of them and recover from him or them when found guilty.

The objection is that the instruction is an abstract proposition not based on the evidence.

There was evidence which tended to prove that the deceased had been drinking before going to Hardwick's saloon and that he also visited another saloon during the day at Percy. The statute imposes a liability for causing the intoxication in part. Therefore under the evidence the instruction was proper and should have been given.

The substance of instruction number four was that if the deceased had liquor from other places than the saloon of the defendant and yet if he obtained liquor from Hardwick which contributed to his intoxication and he was intoxicated and his death resulted therefrom, it would be no defense that he had obtained liquor elsewhere.

The criticism is that the instruction should have said the liquor obtained from Hardwick must have contributed to the intoxication in an "appreciable degree," citing Morley et al. v. Moulton, 45 Ill. App. 304.

We are of opinion it was not necessary to employ the words "appreciable degree" in this instruction. By the instruction, which is in the language of the statute, the dram-shop keeper by the liquor he furnishes, must contribute to the intoxication,—if so he is liable; otherwise not. The term is a mere refinement calculated to confuse and had no place in the instruction. But if it were necessary, the jury was so advised in instruction number two given for appellants, which read with number four states the intoxication must be contributed to in an "appreciable degree."

Counsel for appellees in his closing argument to the

jury said "There is no hardship in rendering a verdict against the brewery in this case. The law makes it liable and fixes the limit, and breweries expect to have to pay damages of this kind. They figure on it in estimating their profits, and the profits of the brewery business are big enough to stand it," and this is assigned as error.

The argument was not based upon any evidence in the case. There was no evidence that breweries expect to pay damages of the kind, nor that they calculate it in estimating their profits. Nor was there any evidence their profits were large. The assumption of counsel was wholly outside of the evidence and unwarranted and if we could see that it had any effect in securing a verdict for excessive damages, we should not hesitate to reverse the judgment. This court will not sanction or approve a verdict secured by unwarranted statements not fairly based on the evidence, or by appeals to passion or prejudice where it can be seen such conduct operates to the prejudice of the other party, and the rebuke of the trial court and withdrawal of the remark will not always cure the impropriety. We cannot see that the remarks complained of would have any effect except to enhance the damages, and we must assume the damages were not excessive, as no complaint is made of excessive damages in appellants' motion for a new trial.

Believing the record to be substantially free from error and the verdict fully sustained by the evidence, the judgment is affirmed.

*Affirmed.*